Hon. Frank W. Dunham, Jr. President Board of Commissioners of Pilots of the State of New York
The secretary of the Board of Commissioners of Pilots has requested our opinion on the following questions: (1) whether a pilot, licensed only by the State of Connecticut and the Federal government, may pilot a vessel into a Connecticut port from sea through the New York waters of Long Island Sound, entering from Block Island Sound and, by the same route, from a Connecticut port to sea; and (2) whether a similarly licensed pilot may pilot a vessel from a Connecticut port to Execution Rocks in Long Island Sound, and by the same route from Execution Rocks to a Connecticut port?
In a previous opinion, we concluded that a pilot duly licensed by New York could pilot vessels from Long Island Sound to sea, via Block Island Sound, through waters over which the State of Rhode Island claims jurisdiction for pilotage purposes (Op Atty Gen No. 85-F7). For the reasons discussed in that opinion, we conclude that a Connecticut pilot may transit the New York waters of Long Island Sound (ibid.; see 46 U.S.C. § 212). With regard to whether a Connecticut pilot may transit the Rhode Island waters of Block Island Sound, it is not appropriate for us to comment on a pilotage matter which does not involve New York pilots or waters (but see United States v Maine, 105 S Ct 992
[1985]).
In answering your second question regarding pilotage to and from Execution Rocks in western Long Island Sound, the applicable Federal law provides that a vessel coming into or going out of any port situate upon waters which are the boundary between two states may take on a pilot duly licensed by either of the states bounded by such waters ( 46 U.S.C. § 212; Op Atty Gen No. 85-F7). There is no question that the Long Island Sound acts as the boundary between New York and Connecticut, and that pilots from either state may navigate those portions of the Sound which acts as the boundary between the states. If a northsouth line is drawn from the westernmost point in Connecticut which borders Long Island Sound, however, it becomes apparent that a portion of the Sound does not act as a boundary between the states, but rather, acts as a boundary between the counties of Nassau and Westchester. Your question is whether this area is included under the alternate pilotage provisions found in 46 U.S.C. § 212.
In The Clymene (9 Fed Reg 165 [1881], affd 12 Fed Reg 346 [1882]), the issue was addressed whether a pilot who held a Delaware license could pilot a vessel up the Delaware River to Philadelphia. Pennsylvania law required pilots bringing vessels into Philadelphia to hold a Pennsylvania license. Based on this law, the master of the vessel refused to pay the Delaware pilot for his services, and the action was commenced to recover them.
In interpreting the predecessor to 46 U.S.C. § 212, the Court concluded that although the State of Delaware did not border on that portion of the river that Philadelphia fronted on, a Delaware license was sufficient for pilotage up the Delaware to Philadelphia:
 "The commerce on the Delaware bay and river, no matter where from or where bound, does not belong to Pennsylvania. That she and her citizens derive a larger share of benefit from it than her neighbors, is her good fortune, but it confers no right on her to say who shall enter a port within her limits, or what pilot shall be employed" (9 Fed Reg at 168).
This analysis is consistent with the intent of section 212 and its predecessors which was to prevent "pilotage wars" between adjacent states, in which each state undertook to secure for its pilots some exclusive privilege or advantage in a bay or harbor (The Abercorn, 26 Fed Red 877, 879 [1886]). Because of the proximity of Execution Rocks to the Connecticut border, and its location in relation to the Long Island Sound as a whole, we conclude that a Connecticut pilot may transit the New York waters surrounding Execution Rocks.
We conclude that a pilot duly licensed by the State of Connecticut and the Federal government may: (1) pilot a vessel through the New York waters of Long Island Sound; and (2) pilot a vessel from a Connecticut port to Execution Rocks in western Long Island Sound, and by the same route from Execution Rocks to a Connecticut port.